IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                     No. CR 06-783 JB

PETRA GARCIA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum and Request for Agreed Upon Sentence, filed August 21, 2007 (Doc. 50). The Court held a sentencing hearing on August 30, 2007. The primary issue is whether the Court should accept the parties' rule 11(c)(1)(C) agreement, which varies substantially from the advisory Guideline range, and sentence Defendant Petra Garcia to three days of imprisonment, or time served, whichever is less, and one year of supervised release, because of the unique 18 U.S.C. § 3553(a) factors that are present in this case. For the reasons stated at the time of the sentencing hearing, and for reasons consistent with those already stated, the Court accepts the plea agreement, and will sentence Garcia consistently with it. The Court will sentence Petra Garcia to three-days incarceration, or time served, whichever is less, and one year of supervised release.

## FACTUAL BACKGROUND

On March 8, 2006, Garcia asked her boyfriend, Raymond Tenorio, to watch their baby while she took some of her family members to Albuquerque, New Mexico. See Presentence Investigation

Report ("PSR") ¶ 15, at 6, disclosed on June 8, 2007.[1]  Garcia contends that Tenorio refused to watch their baby because he said he was going to help his mother string jewelry.  See id.  After Tenorio refused to watch their baby, Garcia took the baby home and called Tenorio several times.  See id.

Tenorio never answered any of Garcia's calls.  See id.  Garcia then went to Tenorio's house and found that he was not home.  See id.  Garcia then went to Melvin Lucero's residence to look for Tenorio and was told that he had left Lucero's house to get beer in Pena Blanca, New Mexico.  See id. ¶ 16, at 6.

Garcia contends that she then left Lucero's house and found Tenorio with two other males.  See id.  When the three men saw Garcia, they asked her to take them to get beer.  See id.  According to Garcia, when she asked Tenorio why he was not helping his mother like he had told Garcia he would be, he said that he was going to drink and would not take care of the baby.  See id.  Garcia contends that she could tell Tenorio had already been drinking that day.  See id.

Tenorio contends that, after Garcia found him walking on the road, he and the two other males continued to walk, and that Garcia "came at" them with her car.  Id. ¶ 9, at 4.  Tenorio states that, after Garcia missed hitting him, he picked up a rock and threw it at her car, causing the back window to break.  See id. ¶ 10, at 4-5. Tenorio contends that Garcia then turned around and drove at Tenorio a second time, hitting the left side of his body.  See id. ¶ 8, at 4.

Garcia contends that, before she drove her car at Tenorio, he began throwing rocks at her vehicle and that they got into an argument about the paternity of their baby.  See id. ¶ 17, at 6.

---

[1]The disclosure date of the PSR was not indicated on the PSR provided to the Court.  The United States Probation Office provided the disclosure date of June 8, 2007 to the Court via telephone on February 1, 2008.

Garcia states that, after she and Tenorio had argued and he had thrown rocks at her car, "something made me drive towards him, it just happened." Id. PSR ¶ 18, at 7.

The hit to Tenorio caused his body to go on the hood of Garcia's vehicle and hit the windshield, causing it to break. See id. ¶ 9, at 4. As a result of this offense, Tenorio suffered a broken facial bone below his right eye, several broken bones in his nose, a broken and dislocated thumb, a broken proximal fibia in his left leg, and stitches to his head. See id. ¶ 11, at 5.

Garcia reported that she was afraid of Tenorio and that Tenorio has a history of domestic violence in their relationship. See PSR ¶ 19, at 7. At the sentencing hearing on August 30, 2007, the United States stated that, during the pendency of Garcia's case, there had been multiple cases of alleged domestic violence by Tenorio against other women. See Transcript of Hearing at 6:8-12 (taken August 30, 2007)("Tr.")(Barth).[2]

### PROCEDURAL BACKGROUND

According to the United States Probation Office ("USPO"), the PSR was disclosed on June 8, 2007. On August 28, 2007, the USPO disclosed an addendum to the PSR. See PSR, Addendum at 1, disclosed on August 28, 2007 ("Addendum"). The Addendum stated that Garcia provided a copy of her psychological evaluation to the USPO. See id.; Sentencing Memorandum, Elliot Rapoport Evaluation, dated October 23, 2007 ("Report").

The psychological evaluation report was completed on October 23, 2006, by Psychologist Elliot J. Rapoport in Santa Fe, New Mexico. See Report at 1. According to the report, Garcia's psychological evaluation results were consistent with the presence of Post Traumatic Stress Disorder (Battered Woman's Syndrome) and Adjustment Disorder with Mixed Anxiety and Depressed Mood.

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

See id. at 8-9.  Dr. Rapoport found that, in Garcia's case, the results of multiple episodes of psychological and physical domestic violence have rendered Garcia in a consistently high level of arousal in such a way that she is often concerned about defending herself against the possibility of additional abuse.  See id. at 8.

Dr. Rapoport further stated "the result of the data available . . . suggests that Petra Garcia was the victim of both psychological and physical abuse over the course of her relationship with Raymond Tenorio."  Id. at 9.  The psychological report also stated: "Ms. Garcia reported . . . a number of situations in which she was the victim of domestic violence including any number of situations in which Mr. Tenorio would chase her with the family vehicle when he was intoxicated. . . . [S]he also described episodes of what amounts to spousal rape."  Id.  The report also indicated that Garcia told Dr. Rapoport that "when he was drunk, . . . I was afraid of him."  Id.

On April 12, 2007, Garcia entered into a plea agreement with the United States pursuant to rule 11 of the Federal Rules of Criminal Procedure.  See Plea Agreement, filed April 12, 2007 (Doc. 44)("Plea Agreement").  In the agreement, Garcia pled guilty to a one-count information charging her with violating 18 U.S.C. §§ 1153 and 13, that being a Crime on an Indian Reservation: Assimilated Crimes Act: N.M.S.A. 1978 § 30-3-2.  See Plea Agreement at 2.  The agreement states: "[t]he following specific sentence is the appropriate disposition of this case: time served, with a term of supervised release of three years and as a special condition of supervised release that the defendant serve one year home detention, restitution and fine as ordered by the Court."  Id. at 3.  The plea agreement also acknowledged that Garcia was entitled to a 2-level reduction from the base offense level, as calculated under the Guidelines, for her affirmative acceptance of personal responsibility for her criminal conduct.  See id. at 3-4.  The PSR indicates that the government verbally amended the plea agreement to change the term of supervised release to one year.  See PSR

¶ 3, at 3.

On August 21, 2007, Garcia, through her counsel, filed a Sentencing Memorandum and Request for Agreed Upon Sentence. See Sentencing Memorandum and Request for Agreed Upon Sentence, filed August 21, 2007 (Doc. 50)("Sentencing Memorandum"). At the sentencing hearing on August 30, 2007, the United States moved for the additional one-level reduction for Garcia's acceptance of responsibility, giving her a total reduction of three levels for acceptance of responsibility. See Tr. at 3:3-6 (Court & Barth). During the hearing, both Garcia and the United States asked the Court to adopt the recommended sentence in the 11(C)(1)(c) agreement. See Tr. at 5:11-13 (Keefe); id. at 7:7-11 (Barth). Pursuant to the requests of both parties, the Court accepted the plea agreement and indicated that the judgment and sentence would be consistent with it. See Tr. at 7:21-22 (Court).

Garcia's adjusted criminal offense level is 23. See PSR ¶ 36, at 12. Her total criminal offense level, taking into consideration her 3-level reduction for acceptance of responsibility, is 20. See id. ¶ 38, at 12. Her criminal history category is I. See id. ¶ 84, at 25. Based on the total offense level of 20 and a criminal history category of I, the guideline imprisonment range is 33 to 41 months. See id. ¶ 84, at 25. Pursuant to U.S.S.G. § 5G1.1, sentencing on a single count of conviction, the guideline imprisonment sentence is 18 months.[3] See id.

---

[3] Garcia pled guilty to a one-count information charging her with violating 18 U.S.C. §§1153 and 13, that being a Crime on an Indian Reservation: Assimilated Crimes Act: N.M.S.A 1978 § 30-3-2 .: Aggravated Assault. See Plea Agreement at 2. 18 U.S.C. § 13 (a) provides:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory,

¶ 3, at 3.

On August 21, 2007, Garcia, through her counsel, filed a Sentencing Memorandum and Request for Agreed Upon Sentence. See Sentencing Memorandum and Request for Agreed Upon Sentence, filed August 21, 2007 (Doc. 50)("Sentencing Memorandum"). At the sentencing hearing on August 30, 2007, the United States moved for the additional one-level reduction for Garcia's acceptance of responsibility, giving her a total reduction of three levels for acceptance of responsibility. See Tr. at 3:3-6 (Court & Barth). During the hearing, both Garcia and the United States asked the Court to adopt the recommended sentence in the 11(C)(1)(c) agreement. See Tr. at 5:11-13 (Keefe); id. at 7:7-11 (Barth). Pursuant to the requests of both parties, the Court accepted the plea agreement and indicated that the judgment and sentence would be consistent with it. See Tr. at 7:21-22 (Court).

Garcia's adjusted criminal offense level is 23. See PSR ¶ 36, at 12. Her total criminal offense level, taking into consideration her 3-level reduction for acceptance of responsibility, is 20. See id. ¶ 38, at 12. Her criminal history category is I. See id. ¶ 84, at 25. Based on the total offense level of 20 and a criminal history category of I, the guideline imprisonment range is 33 to 41 months. See id. ¶ 84, at 25. Pursuant to U.S.S.G. § 5G1.1, sentencing on a single count of conviction, the guideline imprisonment sentence is 18 months.[3] See id.

---

[3] Garcia pled guilty to a one-count information charging her with violating 18 U.S.C. §§1153 and 13, that being a Crime on an Indian Reservation: Assimilated Crimes Act: N.M.S.A 1978 § 30-3-2 .: Aggravated Assault. See Plea Agreement at 2. 18 U.S.C. § 13 (a) provides:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory,

**RELEVANT LAW REGARDING SENTENCING GUIDELINES**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than

---

Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to alike punishment.

Id. 18 U.S.C. § 1153 provides:

(a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury (as defined in section 1365 of this title), an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

(b) Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

Id. Under N.M.S.A. 1978 § 30-3-2, Garcia committed a fourth-degree felony which carries a maximum term of imprisonment of 18 months under N.M.S.A. 1978 § 31-18-25. Based on a total offense level of 20 and a criminal history category of I, the Guideline imprisonment range for Garcia is 33 to 41 months. See PSR ¶ 84, at 25. Under U.S.S.G. § 5G1.1, when the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized sentence shall be the guideline sentence. See U.S.S.G. § 5G1.1 (a). Thus, the maximum term of imprisonment for Garcia is 18 months.

necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D). See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference. See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due

consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted). A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, *591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007). Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in face of the advisory guideline sentence. See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, *591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).

## LAW REGARDING RULE 11(c)(1)(C) AGREEMENTS

Rule 11 of the Federal Rules of Criminal Procedure governs Rule 11(c)(1)(C) plea agreements. See Fed. R. Crim. P. 11. Rule 11 states:

(c) Plea Agreement Procedure.

(1) In General. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:

(A) not bring, or will move to dismiss, other charges;

(B) recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not

>apply (such a recommendation or request does not bind the court); or
>
>(C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed. R. Crim. P. 11(C). A statement in a plea agreement "that a particular provision of the Sentencing Guidelines . . . does or does not apply" binds the court once it accepts the plea agreement. United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007)(quoting Fed. R. Crim. P. 11(c)(1)(C)). In contrast, a plea agreement that does not so specify does not bind the district court to any particular sentencing range or recommendation. See United States v. Herula, 464 F.3d 1132, 1138 (10th Cir. 2006)(citing Fed. R. Crim. P. 11(c)(1)(B)). Furthermore, "[u]nder Rule 11(c)(1)(C), a stipulated sentence binds the court once the court accepts the plea agreement." U.S. v. Pelayo-Torres, 221 Fed.Appx. 801, 803 (10th Cir. 2007)(internal quotations omitted).

### SENTENCING ON A SINGLE COUNT OF CONVICTION

U.S.S.G. § 5G1.1 states:

>(a) Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.
>
>(b) Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.
>
>(c) In any other case, the sentence may be imposed at any point within the applicable guideline range, provided that the sentence--
>
>(1) is not greater than the statutorily authorized maximum sentence, and
>
>(2) is not less than any statutorily required minimum sentence.

U.S.S.G. § 5G1.1.

## ANALYSIS

The Court has carefully considered the sentencing memorandum, all the letters from family and friends in support of Garcia that were attached to the sentencing memorandum, and the psychological report from Dr. Rapoport. In light of these submissions, the Court believes that acceptance of the plea agreement and a sentence consistent with it is appropriate. The Court believes that the circumstances of Garcia's felony conviction, her mental and emotional conditions, and her past relationship with Tenorio, counsel for a variance and a sentence of time served followed by one year of supervised release.

### I.   GARCIA'S CASE DOES NOT FIT INTO THE HEARTLAND OF CASES, THUS THE COURT WILL GRANT A SUBSTANTIAL VARIANCE AND IMPOSE A SENTENCE CONSISTENT WITH THE PLEA AGREEMENT.

The Court has carefully reviewed the provisions of 18 U.S.C. § 3553(a). Given all the circumstances surrounding Garcia's felony conviction, her psychological evaluation report, and her relationship with Tenorio, the Court believes that a sentence of time served followed by one year of supervised release is a reasonable sentence. Under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Court accepts the plea agreement, which includes a specific sentence of three days, time served, and a year of home detention while on her term of supervised release. The Court is satisfied that the agreed-upon sentence varies from the advisory guidelines for justifiable reasons.

The Court has considered the guidelines, but in arriving at its sentence, has taken account not only of the Guidelines, but of other sentencing goals. The Court has specifically considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant, and the Court believes that, given the circumstances of this case, that a sentence of time served followed by one year of supervised release is a reasonable sentence.

The Court does not believe that the punishment that is set forth in the advisory guidelines is appropriate for this offense because of the unique circumstances that Garcia's case presents. The Court believes that the sentence that the parties have agreed upon, of time served and one year of supervised release, reflects the seriousness of this offense. While the Court believes that Garcia's offense is a serious offense, the Court believes that it can balance the factors of 18 U.S.C. 3553, without imposing more incarceration, in a way that Garcia's sentence promotes the goals of the Sentencing Reform Act.

The Court believes that the proposed sentence provides just punishment. Furthermore, the Court believes that Garcia will be adequately deterred through complying with the conditions the Court will put in place as part of her supervised release. The Court also believes that the conditions of Garcia's supervised release, including training and counseling, help her sentence to fully reflect the factors embodied in 18 U.S.C.§ 3553(a). Additionally, because most of Garcia's criminal history relates to Tenorio, the Court does not believe that more incarceration is necessary to protect the public from Garcia's future behavior. Given Garcia's age of thirty-seven years, the Court does not think that there is a great likelihood of recidivism in this case. The Court also believes that this sentence is reasonable, based on the circumstances of the crime, and the character and history of Garcia, and moreover, the Court believes that the sentence is sufficient without being greater than is necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.

**IT IS ORDERED** that the Defendant's Request for the Agreed Upon Sentence is granted. Consistent with the agreed upon sentence in the rule 11(c)(1)(C) agreement, the Court will grant Garcia's request for a substantial variance. Garcia is sentenced to three days of imprisonment, or time served, whichever is less, and will be placed on supervised release for a term of one year.

                                                          _____
                                                          UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
  Acting United States Attorney
Charles Barth
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Michael A. Keefe
  Assistant Federal Public Defender
Federal Public Defender
Albuquerque, New Mexico

      *Attorney for the Defendant*